IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-161-D

| | | |
|---|---|---|
| GTC SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| REGION Q WORKFORCE | ) | |
| INVESTMENT CONSORTIUM, | ) | |
| and MID-EAST COMMISSION, | ) | |
| | ) | |
| Defendants. | ) | |

On September 30, 2014, Region Q Workforce Investment Consortium and Mid-East Commission ("defendants") moved for summary judgment concerning GTC Services, LLC's ("plaintiff" or "GTC Services") claims that defendants violated plaintiff's procedural due process rights and tortiously interfered with plaintiff's contract to provide youth services for the 2010–11 Program Year [D.E. 26]. On February 3, 2015, plaintiff responded in opposition [D.E. 31]. On February 11, 2015, defendants replied [D.E. 32] and moved to strike the affidavit that plaintiff attached to its response [D.E. 33]. As explained below, the court grants defendants' motion for summary judgment and motion to strike.

I.

Callie Northern-Herring owns GTC Services. GTC Services provides employment and training opportunities to people between the ages of 16 to 21 under the Workforce Investment Act. See 29 U.S.C. §§ 2801–2945.

North Carolina created the Mid-East Commission in May 1967 as a Regional Council of Government serving the residents of Beaufort, Bertie, Hertford, Martin, and Pitt Counties. Region

Q Workforce Investment Consortium awarded a contract to GTC Services for the period from July 1, 2008, to June 30, 2009, and another contract for the period from July 1, 2009, to June 30, 2010. Shepard Aff. [D.E. 27-6] ¶ 5. Under the contracts, GTC Services provided employment and training opportunities to people between the ages of 16 to 21 in Beaufort, Bertie, Herford, Martin, and Pitt Counties. Id. ¶¶ 3, 5.

In September 2009, the Region Q Workforce Development Compliance Manager, Charlanda Shepard, notified GTC Services of several performance concerns, including disallowed costs and wages, incorrect staff and travel reimbursement, incorrect time sheets, and bank records suggesting that GTC Services lacked sufficient funds to cover program expenses. Id. ¶ 7; Shepard Aff., Ex. A [D.E. 27-6] 15–17. In response, GTC Services retained Tom Robinson, C.P.A., to examine its financial statements. Pl. Dep. [D.E. 27-2] 36 (deposition page 35). On March 7, 2010, Shepard notified GTC Services that the "audit for year ending June 30, 2009 is due to the Local Area no later than March 31, 2010." Shepard Aff. ¶ 10; Shepard Aff., Ex. D [D.E. 27-6] 24–25.

On March 10, 2010, the Region Q Workforce Development Board Youth Committee announced the schedule for the request for proposals ("RFP") for the contract to be awarded for the 2010–11 Program Year. See Shepard Aff. ¶ 11; Shepard Aff., Ex. E [D.E. 27-6] 28–29. GTC Services did not submit Robinson's audit by the March 31, 2010 deadline. See Shepard Aff. ¶ 12; Shepard Aff., Ex. F [D.E. 27-6] 33–34. On April 15, 2010, the Region Q Workforce Development Board notified GTC Services that it was out of compliance with the federal audit requirements of its contract for the 2009–10 Program Year. See Shepard Aff. ¶ 13, Shepard Aff., Ex. G [D.E. 27-6] 35.

On April 15, 2010, GTC Services submitted a bid in response to the RFP for the contract to be awarded for the 2010–11 Program Year. See Dorsey Aff. [D.E. 27] ¶ 10. The RFP required GTC

2

Services to attach a copy of its "most recent annual financial and compliance audit." Shepard Aff., Ex. I [D.E. 27-6] 37; Dorsey Aff., Ex. D [D.E. 27-8] 72. In response, GTC Services stated that its audit period was "07/2008 - 06/2009" and that the audit was "In process." Shepard Aff., Ex. I [D.E. 27-6] 37; Dorsey Aff., Ex. D [D.E. 27-8] 72.

On April 26, 2010, Tim Ware, Executive Director for the Mid-East Commission, notified GTC Services that GTC Services was out of compliance with the federal audit requirement of its contract for the 2009–10 Program Year and that the Mid-East Commission was suspending funding to GTC Services effective immediately. See Shepard Aff. ¶ 17; Shepard Aff., Ex. K [D.E. 27-6] 54. On April 28, 2010, GTC Services submitted its audit for the year ending June 30, 2009. The audit, however, was incomplete. See Shepard Aff. ¶ 18; Shepard Aff., Ex. L [D.E. 27-6] 56.

On May 12, 2010, the Region Q Workforce Development Board ("Board") met and discussed GTC Services. See Shepard Aff. ¶ 19; Shepard Aff., Ex. M [D.E. 27-6] 58; Dorsey Aff. ¶ 13; Dorsey Aff., Ex. F [D.E. 27-8] 76. The Board noted that GTC Services was out of compliance with the audit requirements of its contract for the 2009–10 Program Year and that the Board had two choices: have the Mid-East Commission operate the program or request a known provider to operate the program. See Shepard Aff. ¶ 19; Shepard Aff., Ex. M [D.E. 27-6] 58; Dorsey Aff. ¶ 14. During the meeting, the Board also noted that GTC Services was not eligible for the contract award for the 2010–11 Program Year due to noncompliance with federal regulations. See Shepard Aff. ¶ 20; Shepard Aff., Ex. N [D.E. 27-6] 64. The Board then considered the various proposals and voted to award the 2010–11 Program Year contract to two other entities. See Shepard Aff. ¶ 20; Shepard Aff., Ex. N [D.E. 27-6] 64.

On May 15, 2010, the Board notified GTC Services that its proposal for the 2010–11 Program Year "did not qualify for funding." Shepard Aff. ¶ 21; Shepard Aff., Ex. O [D.E. 27-6] 68.

3

Although GTC Services was aware of an administrative appeal process, GTC Services did not file an administrative appeal. See Shepard Aff. ¶¶ 22, 25. Instead, on May 17, 2010, GTC Services wrote to the Board and claimed that its audit period might have ended on December 31, 2009, not June 30, 2009; therefore, its audit possibly was not due until September 30, 2010. See Shepard Aff. ¶ 23; Shepard Aff., Ex. P [D.E. 27-6] 69; Dorsey Aff. ¶ 15.

On June 7, 2010, the Board met in special meeting to address GTS Services's letter. The Board did not change its award decision for the 2010–11 Program Year. See Shepard Aff. ¶ 25; Shepard Aff., Ex. R [D.E. 27-6] 72; Dorsey Aff. ¶¶ 17–18, 20; Dorsey Aff., Ex. M [D.E. 27-8] 93.

On June 6, 2013, GTC Services filed suit alleging that defendants violated its right to procedural due process and tortiously interfered with its contract. See Compl. [D.E. 1-2]. Both claims concern the failure to receive the contract award for the 2010–11 Program Year. Id. ¶¶ 19–30.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of genuine dispute of material facts or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however,

4

cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587.

To succeed on its procedural due process claim, GTC Services "must satisfy three elements. First, [it] must demonstrate that [it] had a constitutionally cognizable life, liberty, or property interest. Second, [it] must show that the deprivation of that interest was caused by some form of state action. . . . Third, [it] must prove that the procedures employed were constitutionally inadequate." Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013) (internal quotations omitted). GTC Services, however, had no constitutionally cognizable property interest in being awarded the contract for the 2010–11 Program Year. See, e.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1030 (1992); Perry v. Sindermann, 408 U.S. 593, 599–603 (1972); Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Jackson v. Long, 102 F.3d 722, 729–30 (4th Cir. 1996); Erickson v. United States, 67 F.3d 858, 863 (9th Cir. 1995); Green v. Cashman, 605 F.2d 945, 946 (6th Cir. 1979); Roberson v. City of Goldsboro, 564 F. Supp. 2d 526, 529–31 (E.D.N.C. 2008); RWM Consultants, Inc. v. Centro de Gestion Unica Del Suroeste, 491 F. Supp. 2d 245, 250–51 (D.P.R. 2007); Human Res. Dev. Found., Inc. v. Work 4WV-Region 1, Inc., No. 1:05-00559, 2007 WL 773905, at *4 (S.D. W. Va. Mar. 9, 2007) (unpublished); Whitesill v. Town of Morrisville, 446 F. Supp. 2d 419, 423–24 (E.D.N.C. 2006). After all, the RFP stated that the Board "reserves the right to accept or reject any or all proposals received." Pl. Dep. 103–04; Pl. Dep., Ex. 29 [D.E. 27-5] 62. Furthermore, GTC Services cites nothing in the record that created a cognizable property interest concerning the contract for the 2010–11 Program Year. Alternatively, even if GTC Services had a

5

property interest, GTC Services failed to follow the postdeprivation remedies available to it to rectify what it believed to be the wrongful denial of a contract. See, e.g., Tri Cnty. Paving Inc. v. Ashe Cnty., 281 F.3d 430, 437–38 (4th Cir. 2002). Thus, the court grants summary judgment to defendants on plaintiff's procedural due process claim.

To succeed on its tortious interference with contract claim under North Carolina law, GTC Services must prove: (1) a valid contract exists between the plaintiff and a third party that provides the plaintiff some contractual right against the third person; (2) the defendant had knowledge of the contract; (3) the defendant intentionally induced the third party not to perform the contract; (4) the defendant induced the contract's nonperformance without justification; and (5) the third party's failure to perform the contract caused actual damage to the plaintiff. See, e.g., Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 220, 367 S.E.2d 647, 649–50 (1988); Childress v. Abeles, 240 N.C. 667, 674, 84 S.E.2d 176, 181–82 (1954); Clinical Staffing, Inc. v. Worldwide Travel Staffing, Ltd., No. 5:12-CV-647-D, 2013 WL 5762385, at *6 (E.D.N.C. Oct. 21, 2013) (unpublished).

GTC Services's tortious-interference claim fails for at least two reasons. First, the claim concerns a contract that GTC Services hoped to win for the 2010–11 Program Year, not a contract that it had. See Compl. ¶ 23; Pl. Dep. 109; Pl. Dep., Ex. 28 [D.E. 27-4] 25. Second, defendants acted with justification in not awarding the contract for the 2010–11 Program Year to GTC Services. See, e.g., Shepard Aff. ¶ 19; Shepard Aff., Ex. M [D.E. 27-6] 58; Dorsey Aff. ¶¶ 14, 20; Dorsey Aff., Ex. G[ D.E. 27-8] 81. Accordingly, the court grants summary judgment to defendants on plaintiff's tortious-interference claim. In light of this conclusion, the court need not address defendants' alternative arguments concerning governmental immunity or the statute of limitations.

In opposing defendants' motion for summary judgment, GTC Services submitted an unsigned "affidavit" that contained no signature of the affiant and no notary stamp or seal. See [D.E. 31-1].

The "affidavit" is improper and the court grants defendants' motion to strike the "affidavit." See, e.g., Slep-Tone Entm't Corp. v. Powers, No. 5:12-CV-53-BO, 2014 WL 2040104, at *7 (E.D.N.C. Apr. 3, 2014) (unpublished); Gell v. Town of Aulander, 252 F.R.D. 297, 301 (E.D.N.C. 2008).

II.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 26], and GRANTS defendants' motion to strike [D.E. 33]. The clerk shall close the case.

SO ORDERED. This 14 day of April 2015.

JAMES C. DEVER III
Chief United States District Judge

7